IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCY L. COLKITT, *a Pennsylvania resident*,<br><br>*Plaintiff*,<br><br>v.<br><br>JPMORGAN CHASE BANK N.A. *and* J.W. KORTH & COMPANY, LP,<br><br>*Defendants*. | Civil Action No. 2:24-cv-1482<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Marcy L. Colkitt ("Colkitt") brought this action against Defendants JPMorgan Chase Bank N.A. ("JPMorgan") and J.W. Korth & Company, LP ("Korth") (collectively, "Defendants") asserting claims for breach of contract, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, negligence, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (ECF No. 28).[1] The asserted claims arise out of the sale of a certificate of deposit ("CD") to Colkitt's late mother and the alleged failure of JPMorgan to redeem the CD. Defendants filed motions seeking to dismiss Colkitt's claims. (ECF Nos. 32, 35). For the reasons explained below, the Court will grant in part and deny in part Defendants' motions. The Court holds that Colkitt adequately pled a breach of contract claim against JPMorgan, and breach of fiduciary duty and negligent misrepresentation claims against Korth. It will dismiss all other claims against JPMorgan and Korth.

---

[1] The operative complaint is the second amended complaint. (ECF No. 28).

1

I.      FACTUAL AND PROCEDURAL BACKGROUND

JPMorgan is a bank incorporated in Delaware with a principal place of business in New York. (ECF No. 28, ¶ 2). Korth is a brokerage firm and a Michigan limited partnership (*Id.* ¶3). Colkitt is the daughter of the deceased Mary Jean Colkitt ("M.J. Colkitt") and pleads, "upon information and belief" to be the successor in interest to assets from an account in M.J. Colkitt's name. (*Id.* ¶ 1). Colkitt alleges that her mother asked her son, and Colkitt's brother, Douglas Colkitt ("D. Colkitt"), to assist with her investments as a part of estate planning. (*Id.* ¶ 8).

M.J. Colkitt had an account with Korth. Korth is alleged to have contacted D. Colkitt and solicited M.J. Colkitt to purchase a long-term CD which would not mature until she was approximately 105 years old. (*Id.* ¶ 10). Colkitt alleges that because Korth knew that M.J. Colkitt was elderly, it "solicited her to buy the CD because it had a death put/survivor option and advised her to open a new brokerage account specifically to buy and hold that CD." (*Id.* ¶ 11). Colkitt alleges that "[t]he death put/survivor benefit was the central feature that made the CD of value to [M.J.] Colkitt who, given her age, was almost certain to die before it matured. (*Id.* ¶ 19). She purchased the CD for $250,000.00. (*Id.* ¶ 23). It has a maturity date in November 2035. (*Id.*).

Colkitt alleges that the CD included a death put/survivor option that allows for redemption at its full value upon the death of the buyer, rather than upon the stated maturity date. (*Id.* ¶ 13). Based on Korth's advice, M.J. Colkitt purchased the CD which was issued by JPMorgan. (*Id.* ¶ 16). Colkitt pleads that "[u]pon information and belief, no contracts were executed by [M.J] Colkitt with . . . JPMorgan in connection with her purchase of a CD." (*Id.* ¶ 17). She alleges that Korth did not provide M.J. or D. Colkitt with any prospectuses, disclosures, or similar documents before the CD was purchased. (*Id.* ¶ 18).

Following the purchase, the brokerage account holding the CD was transferred from Korth to non-party Edward Jones. (*Id.* ¶ 26). M.J. Colkitt died on May 26, 2024, at the age of 94. (*Id.* ¶ 30). Colkitt alleges that Edward Jones informed her that the ownership of the CD transferred to her. (*Id.* ¶ 31). She alleges that "JPMorgan has refused to execute the death put" but that she lacks any documents from JPMorgan explaining its reasons for refusal. (*Id.* ¶ 34).[2]

## II.   STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

---

[2] Colkitt's pleading is bereft of any documentary support. She does not attach the CD to the operative complaint, or any prior complaint. JPMorgan purports to offer the relevant terms of the CD, but Colkitt disputes JPMorgan's assertions.

allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.   ANALYSIS

**A. The Court will deny JPMorgan's motion to dismiss Colkitt's breach of contract claim at Count One.**

JPMorgan argues that Colkitt has failed to plead a plausible breach of contract claim. It contends that Colkitt's claim must be dismissed because it is contradicted by the terms and conditions of the CD. (ECF No. 33, p. 6). It also highlights that Colkitt alleges that "no contracts were executed by [M.J] Colkitt with [JPMorgan] in connection with her purchase of the CD." (*Id.* at 3, 8).

Colkitt did not attach the CD or any related documentation to the second amended complaint (or any of her previous complaints). In contrast, JPMorgan purports to have accessed documentation detailing the terms and conditions of the CD. (*Id.* at 4). It argues that the terms outlined in the CD's term sheet ("Term Sheet") foreclose Colkitt's theory of liability. (*Id.* at 6-7). Colkitt disputes the accuracy of the Term Sheet proffered by JPMorgan. (ECF No. 38, pp. 5-8). She contends that this Term Sheet does not apply to the CD at issue. (*Id.*).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without

4

converting the motion to dismiss into one for summary judgment.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Id.* In deciding a motion to dismiss, a Court may only consider documents that are (1) indisputably authentic and (2) the basis of a plaintiff's claims. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

The Court will not consider the evidence from the Term Sheet quoted by JPMorgan. While the Court has no reason to doubt that JPMorgan accurately quoted the Term Sheet, Colkitt disputes that the Term Sheet applies to the CD at issue. This is not the type of situation described in *Burlington* where the plaintiff relied upon the document in preparing the complaint, but strategically decided not to attach it. At this stage in the litigation, the Court cannot determine whether the Term Sheet proffered by JPMorgan is the operative term sheet for the CD at issue.

Unable to consider the alleged terms proffered by JPMorgan, the Court focuses on the allegations in the complaint to determine whether dismissal is appropriate. Count One alleges the following theory: (1) Colkitt is the beneficiary of a CD issued by JPMorgan; (2) the CD allegedly includes a death put that requires JPMorgan to pay the mature value of the CD due to the death of Colkitt's mother; (3) JPMorgan refuses to do so; and (4) Colkitt has suffered damages as a result of JPMorgan's refusal and breach of the CD terms. *Twombley, Iqbal,* and

Rule 12(b)(6) require only notice pleading. The question is whether the allegations pled in Count One adequately give JPMorgan notice of the nature of Colkitt's claim.

JPMorgan issued a CD to Colkitt's mother, which Colkitt now claims to hold. JPMorgan's argument does not focus on the *existence* of the CD, but rather, the *terms* of the CD. It is well-established that a CD is a contract. *Matter of Est. of Caldwell*, 489 A.2d 955, 957 (Pa. Cmwlth. 1985) (stating that CDs "are legally binding contracts, and like any other contract"). Colkitt's theory of breach is clear—that JPMorgan is required to pay the full amount of the CD due to the death of her mother. The Court holds that the allegations in Count One adequately set forth a breach of contract claim.

### B. The Court will dismiss Colkitt's UTPCPL claim against JPMorgan at Count Two.

At Count Two, Colkitt alleges that JPMorgan violated the UTPCPL. (ECF No. 28, ¶¶ 45-51). She brings her claim under the "catchall" provision, which creates a cause of action for "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. C.S. § 201-2. JPMorgan highlights that the gravamen of Colkitt's claim is JPMorgan's alleged "action in marketing the death put and refusing to redeem the CD." (ECF No. 33, p. 9 (citing ECF No. 28, ¶ 51)). First, JPMorgan argues that Colkitt did not adequately plead fraudulent or deceptive conduct in the marketing of the CD. (*Id.* at 9). Second, it contends that its refusal to redeem the CD cannot be deemed to be fraudulent or deceptive, because it is consistent with the terms of the contract. (*Id.*).

The Court will dismiss Count Two. Colkitt does not plausibly assert a violation of the UTPCPL against JPMorgan. She alleges that JPMorgan "led its customers to believe that by purchasing a CD with a death put that the customer would be protected from the downside risk if CD that lost value and the customer died." (ECF No. 28, ¶ 46). These allegations are conclusory

and contradicted by the facts pleaded by Colkitt about the basis of her claims. Colkitt does not allege that there were any communications between M.J or D. Colkitt and JPMorgan. Colkitt pleaded that Korth made all relevant communications regarding the purchase of the CD. Pleading that JPMorgan issued a CD is not enough to maintain a claim under the UTPCPL. UTPCPL plaintiffs must plausibly allege some fraudulent or deceptive conduct. *See* 73 Pa. C.S. § 201-2. Colkitt did not allege any such conduct on behalf of JPMorgan. The Court will dismiss Count Two.

### C. The Court will dismiss Colkitt's unjust enrichment claim at Count Three.

At Count Three, Colkitt asserts a claim of unjust enrichment against JPMorgan. (ECF No. 28, ¶¶ 54-60). She alleges that "JPMorgan accepted $250,000 from [M.J] Colkitt, predecessor of Plaintiff, for a CD with a death put." (*Id.* ¶ 55). She further alleges that JPMorgan has been unjustly enriched by "depriving Plaintiff of the benefit of the death put and the full $250,000." (*Id.* ¶ 59). JPMorgan argues that this claim should be dismissed because the CD is a written contract, and the existence of a written contract bars a claim for unjust enrichment. (ECF No. 33, p. 10). In the alternative, JPMorgan argues that Colkitt failed to plead that JPMorgan received any proceeds from the sale of the CD. (*Id.* at 10-11).

Unjust enrichment is a "quasi-contractual" equitable substitute for a written breach of contact. *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016) (stating that the doctrine of unjust enrichment "does not apply where a written or express contract exists"). A plaintiff cannot recover for unjust enrichment when an express contract governs the relationship between the parties. *Id.*; *see also Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 998-99 (3d Cir. 1987); *Villoresi v. Femminella*, 856 A.2d 78, 84-85 (Pa. Super. 2004) (finding that an unjust enrichment claim may only arise when a transaction of the parties is not otherwise

7

governed by an express contract.). "An express contract is one where the parties specifically express the terms of the agreement, either orally or in writing." *Crawford's Auto Center, Inc. v. Com. of Pa.*, 655 A.2d 1064, 1066 (Pa. Cmwlth. 1995) (internal citations omitted). Although, at the pleading stage, an unjust enrichment claim may be pled in the alternative to a breach of contract claim, this is not possible where the parties do not dispute the existence of a contract. *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 515 (E.D. Pa. 2012) ("Courts typically allow a plaintiff to plead both a breach-of-contract claim and an unjust-enrichment claim only where there is some dispute as to whether a valid, enforceable written contract exists." (internal citations omitted)).

It is undisputed that there was a written contract between M.J. Colkitt and JPMorgan – the CD. While the terms of the contract and performance under the contract are in dispute, the existence of the contract is not. This bars Colkitt's claim for unjust enrichment. The Court will dismiss Count Three.

### D. The Court will dismiss Colkitt's fraudulent misrepresentation claim against JPMorgan at Count Four.

At Count Four, Colkitt brings a claim for fraudulent misrepresentation against JPMorgan. The Court holds that Colkitt's pleading falls short of the standard required to maintain such a claim. The elements of a common-law claim for fraudulent misrepresentation in Pennsylvania are: "(1) a misrepresentation; (2) the fraudulent utterance thereof; (3) an intention by the maker that the recipient will be induced to act; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the reliance." *Fort Washington Resources, Inc., v. Tannen*, 858 F. Supp. 455, 459 (E.D. Pa. 1994) (citing *Browne v. Maxfield*, 663 F. Supp. 1193, 1202 (E.D. Pa. 1987)). A plaintiff attempting to assert a fraud claim must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) ("Rule

9(b)). FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223–24 (3d Cir. 2004), *abrogated on other grounds recognized by In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323 n.22 (3d Cir. 2010). "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* at 224 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

The Court holds that Colkitt has not satisfied the requirements of Rule 9(b) for her fraudulent misrepresentation claim. She does not plead that there were any communications between JPMorgan and Colkitt. Count Four alleges that "[w]hen . . . JPMorgan sold this CD with a death put, it did so knowing that customers would reasonably rely on its representations that upon their death that the beneficiary of the account could invoke the death put." (ECF No. 28, ¶ 62). This allegation does not contextualize the alleged "representations" to which it refers. It does not say who made them, to whom, the date, context, or any other factor that would satisfy the heightened pleading requirements of Rule 9(b). Colkitt has failed to adequately plead a claim for fraudulent misrepresentation. The Court will dismiss Count Four.

### E. The Court will dismiss Colkitt's negligent misrepresentation claim against JPMorgan at Count Five.

At Count Five, Colkitt asserts a claim of negligent misrepresentation. The elements of a claim for negligent misrepresentation under Pennsylvania law are: "(1) a misrepresentation of a

material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects & Eng'rs, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. 2015) (quoting *Bilt–Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005)). The difference between negligent misrepresentation and fraud in Pennsylvania is intent. Fraud requires that a statement be made with actual knowledge or recklessness (rather than negligence) as to its falsity. *See Kit v. Mitchell*, 771 A.2d 814, 819 (Pa. Super. 2001); *Gruenwald v. Adv. Comp.* 730 A.2d 1004, 1014 (Pa. Super. 1999).

Colkitt's negligent misrepresentation claim fails for the same reason as her fraudulent misrepresentation and UTPCPL claims. She does not allege any misrepresentation by JPMorgan. She does not plead that there were any communications between JPMorgan and [M.J.] Colkitt prior to her decision to purchase the CD. The Court will dismiss Count Five.

### F. The Court will deny Korth's motion to dismiss Colkitt's breach of fiduciary duty claim at Count Six.[3]

At Count Six, Colkitt asserts a claim for breach of fiduciary duty against Korth. (ECF No. 28, ¶¶ 72-80). Colkitt pleads that "Korth had a fiduciary duty to advise its customers of material terms and conditions of the products it solicited to them." (*Id.* ¶ 77). Korth's sole argument supporting dismissal of Count Six is that "as a broker-dealer, . . . Korth owed no fiduciary duty to [M.J.] Colkitt." (ECF No. 36, pp. 3-4). Colkitt alleges that Korth is a

---

[3] Korth joined in JPMorgan's motion to dismiss and filed a supplemental brief with respect to claims against it which it believes should be dismissed. (ECF No. 36). But Korth failed to develop any specific argument in support of dismissal. It offers only conclusory assertions as to the purported deficiencies in Colkitt's pleading. Further, Korth supports its arguments with statements of fact that are not pled by Colkitt. (*Id.*). The Court cannot consider these factual contentions at this stage of litigation.

brokerage firm. (ECF No. 28, ¶ 3). The complaint is silent regarding Korth's role as a broker-dealer. The Court may not consider this argument at this stage of litigation. Further, Korth's conclusory legal argument that a broker-dealer owes no fiduciary duty is incorrect. Courts have held that, depending on the circumstances, a broker-dealer *may* owe a customer a fiduciary duty. *See Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 270 (3d Cir. 1998); *Jairett v. First Montauk Securities Corp.*, 153 F. Supp. 2d 562, 575 (E.D. Pa. 2001). The Court will deny Korth's motion with respect to Count Six.

### G. The Court will deny Korth's motion to dismiss Colkitt's claim for negligent misrepresentation at Count Seven.

Colkitt asserts a general claim of "misrepresentation" at Count Seven against Korth. (ECF No. 28, ¶¶ 81-89). The Court's examination of the language of Count Seven reveals that Colkitt is actually pleading a claim of negligent misrepresentation. (*Id.* ¶ 88) ("Korth negligently misrepresented the availability of the death put to [M.J] Colkitt and [D.] Colkitt, causing [M.J.] Colkitt to purchase the CD."). The only argument Korth has advanced for the dismissal of Count Seven, which is contained in its reply brief, is that: "Plaintiff has failed to explain how, if . . . Korth was supposedly duped by [JPMorgan] or unaware of the CD terms, it nevertheless made a misrepresentation to her about 'material risks' of buying a $250,000 CD." (ECF No. 41, p. 3). But Colkitt makes a number of assertions about alleged misrepresentations made by Korth to M.J. and D. Colkitt about the suitability of the CD at issue.[4] In light of these allegations and Korth's undeveloped argument in support of dismissal, the Court will deny the motion with respect to Count Seven.

---

[4] The weight of authority within the United States Court of Appeals for the Third Circuit is that the heightened pleading standard of Rule 9(b) does not apply to negligent misrepresentation claims. *See Anderson v. Batttersby*, Civil No. 1:23-CV-2021, 2024 WL 3498352, at *5 (M.D. Pa. July 22, 2024) (collecting cases).

### H. The Court will dismiss Colkitt's negligence claim against Korth at Count Eight.

Colkitt asserts a claim for negligence at Count Eight. It is nearly coterminous with the allegations of Count Seven but makes a more general allegation that "Korth breached its duty to exercise reasonable care in the sale of the CD with the death put to [M.J] Colkitt." (ECF No. 28, ¶ 92). Korth raises no specific argument in support of its request to dismiss this count. The Court is hesitant to raise issues not highlighted by the parties. However, in this case—with a request to dismiss the negligence claim having been generically preserved by Korth—the Court will dismiss Count Eight. Doing so is in the interest of judicial economy and efficiency.

Count Eight fails under well-established law. To the extent that the claim relates only to representations made by Korth, it is coterminous with Colkitt's negligent misrepresentation claim and must be dismissed. To the extent that Colkitt is asserting a traditional negligence claim, it is barred by Pennsylvania's economic loss doctrine. As a general matter, under Pennsylvania law, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *McGuckin v. Allstate Fire and Cas. Ins. Co.*, 118 F. Supp. 3d 716, 719 (E.D. Pa. 2015) (quoting *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 (Pa. 2009). Colkitt has not alleged any physical injury or property damage. Permitting Count Eight to proceed would be an exercise in futility. The Court will dismiss Count Eight.

### I. The Court will dismiss Colkitt's breach of contract claim against Korth at Count Nine.

Colkitt brings a breach of contract claim against Korth at Count Nine. (ECF No. 28, ¶¶ 95-101). Korth argues that this count should be dismissed because Colkitt did not allege that there was a contract between M.J. Colkitt and Korth. (ECF No. 36, p. 4). The Court agrees. A breach of contract claim must fail as a matter of law when the plaintiff fails to allege the

12

existence of a contract between the relevant parties. Reading the allegations in the light most favorable to Colkitt, she does not allege any contract existed between M.J. Colkitt and Korth. The contract that forms the basis of the action, the CD, was allegedly issued by JPMorgan. (ECF No. 28, ¶ 16). The Court will dismiss Count Nine.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part JPMorgan and Korth's motions to dismiss. (ECF Nos. 32, 35). It will deny JPMorgan's motion (ECF No. 32) with regard to Count One and grant it with regard to Counts Two through Five. It will deny Korth's motion (ECF No. 35) with regard to Counts Six and Seven and grant it with respect to Counts Eight and Nine. The Court will dismiss Counts Two through Five, Eight, and Nine with prejudice.[5] An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

8/19/25
_____
Dated

---

[5] The Court will dismiss Counts Two through Five, Eight, and Nine with prejudice because any further amendment by Colkitt would be futile in the eyes of the Court. *See Burlington*, 114 F.3d at 1434 (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); *see also* 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.15 (3d ed. 2024) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."). Based upon the facts previously pled by Colkitt in her first complaint, (ECF No. 1), the allegations contained in the amended complaint (ECF No. 15), and the allegations contained in the second amended complaint (ECF No. 28), there is no possible factual basis sufficient to state a claim as to Counts Two through Five, Eight and Nine. Colkitt has had three attempts to properly plead these claims. She has failed.